Jack Silver, Esquire SBN# 160575
Law Office of Jack Silver
Post Office Box 5469
Santa Rosa, California 95402-5469
Telephone: (707) 528-8175
Facsimile: (707) 528-8675
lhm28843@sbcglobal.net

Attorneys for Plaintiff
Northern California River Watch

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NORTHERN CALIFORNIA RIVER
WATCH, a 501(c)(3) non-profit public
benefit Corporation,

            Plaintiff,

    v.

HARRISON HOLDINGS LLC (formerly
PSH LLC) and DOES 1 - 30, Inclusive,

           Defendants.
_____/

CASE NO.:

**COMPLAINT FOR INJUNCTIVE RELIEF,
CIVIL PENALTIES, RESTITUTION
AND REMEDIATION**
(Environmental - RCRA - 42 U.S.C. 6901 *et
seq.*; Clean Water Act - 33 U.S.C. 1251 *et seq.*)

NOW COMES Plaintiff, NORTHERN CALIFORNIA RIVER WATCH (hereafter, "PLAINTIFF") by and through its attorneys, and for its Complaint against Defendants, HARRISON HOLDINGS LLC (formally PSH LLC) and DOES 1 - 30, Inclusive (hereafter, "DEFENDANTS"), states as follows:

## I.    NATURE OF THE CASE

1.    This is a citizens' suit brought against DEFENDANTS under the citizen suit enforcement provisions of the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 et seq., (hereafter,"RCRA"), specifically Sections 7002(a)(1)(A), 42 U.S.C. § 6972(a)(1)(A) and 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B), Section 3004, 42 U.S.C. § 6924; Section 3005, 42 U.S.C. § 6924, and Section 4005, 42 U.S.C. § 6945, to stop DEFENDANTS from repeated and ongoing violations of the RCRA. These violations are detailed in the Notice of Violations and

Intent to File Suit (hereafter, "RCRA NOTICE"), attached hereto as EXHIBIT A and made part of these pleadings.

2.      As described in the RCRA NOTICE and below, PLAINTIFF alleges DEFENDANTS are in violation of a permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to the RCRA [42 U.S.C. § 6972(a)(1)(A); 42 U.S.C. § 6924, 42 U.S.C. § 6925; 42 U.S.C. § 6945.]

3.      As described in the RCRA NOTICE and below, PLAINTIFF alleges DEFENDANTS to be past or present generators, past or present transporters, or past or present owners or operators of a treatment, storage, or disposal facility, which has contributed or which is contributing to the past or present handling, storage, treatment, transportation, or disposal of a solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment. [42 U.S.C. § 6972(a)(1)(B); 42 U.S.C. § 6924, 42 U.S.C. § 6925; 42 U.S.C. § 6945.]

4.      PLAINTIFF seeks declaratory relief, injunctive relief to prohibit future violations, the imposition of civil penalties, and other relief for DEFENDANTS' violations of standards and regulations set forth in the RCRA applicable to the use and storage of petroleum pollutants, toxic metals such as lead and other pollutants, and for DEFENDANTS' violation of the RCRA's prohibition against creating an imminent and substantial endangerment to human health or the environment.

5.      RCRA Section 3005, 42 U.S.C. § 6925, requires facilities to obtain permits for the handling, storage, treatment, transportation and/or disposal of hazardous waste.

6.      RCRA Section 3004, 42 U.S.C. § 6924, requires owners and operators of hazardous waste treatment, storage, and disposal facilities to follow enumerated standards. These requirements are enumerated in 40 C.F.R. Part 264 and include requirements for General Facility Standards (Subpart B), Preparedness and Prevention (Subpart C), Contingency Plans and Emergency Procedures (Subpart D), Releases from Solid Waste Management Units (Subpart F), Closure and Post-Closure (Subpart G), Financial Requirements (Subpart H), Surface Impoundments (Subpart

K), Waste Piles (Subpart L), Land Treatment (Subpart M), Landfills (Subpart N), and Miscellaneous Units (Subpart X).

7.     RCRA Section 7002(a)(1)(A), 42 U.S.C. § 6972(a)(1)(A) permits citizen suits against any person alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order effective pursuant to the RCRA.  RCRA Section 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B) permits citizen suits to enjoin the handling, storage, treatment, transportation and/or disposal of hazardous or solid waste which creates or may create an imminent and substantial endangerment to human health or the environment.  Pursuant to RCRA Sections 3008(a), 3008 (g) and 7002(a), 42 U.S.C. §§ 6928(a), 6928 (g) and 6972(a), each violation of the RCRA subjects the violator to a penalty of up to $37,500.00 per day/per violation for violations occurring within five (5) years prior to the initiation of a citizen enforcement action. I n addition, the RCRA provides for injunctive relief pursuant to Sections 3008(a) and 7002(a), 42 U.S.C.§§ 6928(a) and 6972(a).

8.      This is also a citizens' suit for relief brought by PLAINTIFF under the Clean Water Act (or "CWA" or "Act"), 33 U.S.C. § 1251 et seq., specifically 33 U.S.C. § 1311,  33 U.S.C. § 1342, and 33 U.S.C. § 1365, to stop DEFENDANTS from repeated and ongoing violations of the Act.  These violations are detailed in the Notice of Violations and Intent to File Suit (hereafter, "CWA NOTICE"), attached   hereto as EXHIBIT B and made part of these pleadings. DEFENDANTS are either discharging pollutants from a point source without a NPDES permit in violation of 33 U.S.C. § 1311(a), discharging storm water without a NPDES permit in violation of 33 U.S.C. § 1342(p) or are routinely violating the terms of the NPDES permits ("PERMITS") that regulate stormwater discharges.

9.     CWA § 301(a), 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant unless the discharge is in compliance with various enumerated sections of the CWA, including CWA § 402,  33 U.S.C. § 1342, which requires dischargers to obtain a NPDES permit to discharge any pollutant into waters of the United States.  The CWA provides for injunctive relief pursuant to Sections 309(a) and 505(d), 33 U.S.C. §§ 1319(a) and 1365(d).

10.     PLAINTIFF seeks declaratory relief, injunctive relief to prohibit future violations, the imposition of civil penalties, and other relief for DEFENDANTS' violations of the CWA.

## II.     PARTIES

11.     PLAINTIFF, NORTHERN CALIFORNIA RIVER WATCH, is a 501(c)(3) non-profit public benefit corporation duly organized under the laws of the State of California, with headquarters and main office located at 500 North Main Street, Suite 110, Sebastopol, Sonoma County, California.  PLAINTIFF is dedicated to protect, enhance and help restore the surface and subsurface waters of Northern California.  PLAINTIFF's members live in Northern California and in Marin County where the Site under DEFENDANTS' operation and/or control, identified in the RCRA NOTICE and CWA NOTICE and below, which is the subject of this Complaint, is located. PLAINTIFF's members live nearby to waters affected by DEFENDANTS' illegal discharges as alleged in this Complaint.  PLAINTIFF's members have interests in the watersheds which are or may be adversely affected by DEFENDANTS' violations of the RCRA and the CWA as alleged in this Complaint.   Said members use the effected waters and watershed areas for domestic water, recreation, sports, fishing, swimming, hiking, photography, nature walks, religious, spiritual and shamanic practices, and the like.  Furthermore, the relief sought will redress the injury in fact to PLAINTIFF and its members, the  likelihood of future injury and interference with the interests of said members.

12.     Defendant, HARRISON HOLDINGS LLC (formerly PSH LLC), is a limited liability corporation registered with the State of California with administrative offices located in the County of Marin, State of California.  PLAINTIFF is informed and believes and on such information and belief alleges that HARRISON HOLDINGS LLC  is and was at all times relevant to this Complaint, the owner and/or operator of the real property on which the Site identified in this Complaint is situated.

13.     PLAINTIFF is informed and believes and on such information and belief alleges that DEFENDANTS named herein as DOES 1 - 30, Inclusive, respectively, are persons, partnerships, corporations or entities, who are, or were, responsible for, or in some way contributed to, the

1   violations which are the subject of this Complaint or are, or were, responsible for the maintenance,

2   supervision, management, operations, or insurance coverage of DEFENDANTS' Site or operations

3   on that Site as identified herein.  The names, identities, capacities, or functions of DEFENDANTS

4   named herein as  DOES 1 - 30, Inclusive are presently unknown to PLAINTIFF.  PLAINTIFF shall

5   seek leave of court to amend this Complaint to insert the true names of said DOES Defendants when

6   the same have been ascertained.

7   **III.     JURISDICTIONAL ALLEGATIONS**

8         14.     Subject matter jurisdiction is conferred upon this Court by RCRA § 7002(a)(1), 42

9   U.S.C. § 6972(a)(1), which states in part, ". . . any person may commence a civil action on his own

10  behalf (A) against any person . . . who is alleged to be in violation of any permit, standard,

11  regulation, condition requirement , prohibition or order which has become effective pursuant to this

12  chapter, or (B) against any person . . . who has contributed or who is contributing to the past or

13  present handling, storage, treatment, transportation or disposal of any solid or hazardous waste

14  which may present an imminent and substantial endangerment to health or the environment."

15        15.     PLAINTIFF's members reside in the vicinity of, derive livelihoods from, own property

16  near, or recreate on, in or near or otherwise use, enjoy and benefit from the watersheds, land, rivers,

17  and associated natural resources into which DEFENDANTS pollute, or by which DEFENDANTS'

18  operations adversely affect those members'  interests, in violation of  RCRA § 7002(a)(1)(A), 42

19  U.S.C.  §6972(a)(1)(A) and RCRA  §  7002  (a)(1)(B),  42  U.S.C.  §  6972(a)(1)(B).   The health,

20  economic, recreational, aesthetic or environmental interests of PLAINTIFF and its members has

21  been, is being, and will continue to be adversely affected by DEFENDANTS' unlawful violations

22  as alleged herein.  PLAINTIFF contends there exists an injury in fact, causation of that injury by the

23  DEFENDANTS' complained of conduct herein, and a likelihood that the requested relief will

24  redress that injury.

25        16.     Pursuant to RCRA § 7002(2)(A), 42 U.S.C. §6972(2)(A), PLAINTIFF gave statutory

26  notice of the RCRA violations alleged in this Complaint prior to the commencement of this lawsuit

27  by way of the RCRA  NOTICE to: (a) DEFENDANTS, (b) the United States Environmental

28

1    Protection Agency, both Federal and Regional, (c) the State of California Water Resources Control

2    Board, and (d) the solid waste management agency for the State of California - Integrated Waste

3    Management Board.

4          17.    Pursuant to RCRA §§ 7002(a) and (b), 42 U.S.C. §§ 6972(a) and (b), venue lies in this

5    District as the Site and facility and operations thereon under DEFENDANTS' ownership or control

6    and where illegal activities occurred which are the source of the violations complained of in this

7    action, are located within this District.

8          18.    Subject matter jurisdiction is also conferred upon this Court by CWA § 505(a)(1), 33

9    U.S.C. § 1365(a)(1), which states in part that, "any citizen may commence a civil action on his own

10   behalf against any person . . . .who is alleged to be in violation of (A) an effluent standard or

11   limitation . . . . or (B) an order issued by the Administrator or a State with respect to such a standard

12   or limitation."   For purposes of Section 505, "the term 'citizen' means a person or persons having

13   an interest which is or may be adversely affected."

14         19.    PLAINTIFF's members reside in the vicinity of, derive livelihoods from, own property

15   near, or recreate on, in or near or otherwise use, enjoy and benefit from the watersheds, land, rivers,

16   and associated natural resources into which DEFENDANTS pollute, or by which DEFENDANTS'

17   operations adversely affect the interests of PLAINTIFF and its members in violation of CWA §

18   301(a), 33 U.S.C.§1311(a), CWA § 505(a)(1),  33 U.S.C.§ 1365(a)(1), CWA § 402, 33 U.S.C.§

19   1342. The health, economic, recreational, aesthetic and environmental interests of PLAINTIFF and

20   its members may be, have been, are being, and will continue to be adversely affected by

21   DEFENDANTS' unlawful violations as alleged in this Complaint.  PLAINTIFF contends there

22   exists an injury in fact to PLAINTIFF and its members, causation of that injury by DEFENDANTS'

23   complained of conduct, and a likelihood that the requested relief will redress that injury.

24         20.    Pursuant to CWA § 505(b)(1)(A), 33 U.S.C.§1365(b)(1)(A), PLAINTIFF gave

25   statutory notice of the CWA violations alleged in this Complaint to: (a) DEFENDANTS, (b) the

26   United States EPA, Federal and Regional, and (c) the State of California Water Resources Control

27   Board.

28

21.     Pursuant to CWA § 505(c)(3), 33 U.S.C. § 1365(c)(3), a copy of this Complaint has been served on the United States Attorney General and the Administrator of the federal EPA.

22.     Pursuant to CWA § 505(c)(1), 33 U.S.C. § 1365(c)(1), venue lies in this District as the Site under DEFENDANTS' operation and/or control, and where illegal discharges occurred, which is the source of the violations complained of in this action, is located within this District.

## IV.   STATEMENT OF FACTS

23.     PLAINTIFF is informed and believes, and on said information and belief alleges that DEFENDANTS are past or present generators, past or present transporters, or past or present owners and/or operators of the Site and facility identified in the RCRA NOTICE, and have contributed or are contributing to the past or present handling, storage, treatment, transportation, or disposal solid or hazardous waste which may present an imminent or substantial endangerment to health or the environment. Furthermore, DEFENDANTS' handling, use, transport, treatment, storage or disposal of waste at the Site and facility identified in the RCRA NOTICE has violated and continues to violate permits, standards, regulations, conditions, requirements or prohibitions effective pursuant to the RCRA regarding hazardous or solid waste. [42 U.S.C. §§ 6972(a)(1)(A) and (B)]. DEFENDANTS have no RCRA-authorized permits authorizing the activities related to solid or hazardous wastes described in the RCRA NOTICE.

24.     Regulatory agencies have designated surface waters and groundwater in the Marin County area of California as capable of supporting multiple beneficial uses including domestic water supply, and have established Maximum Contaminant Levels ("MCLs") and Water Quality Objectives ("WQOs") for these pollutants in surface and ground waters.

25.     The pollutants identified in the RCRA NOTICE are known carcinogens or reproductive toxins, and have been listed chemicals under Proposition 65. Surface waters and groundwater at and around the Site and facility identified in the RCRA NOTICE are potential sources of drinking water under applicable Regional Water Quality Control Board Plans (aka Basin Plans). PLAINTIFF is informed and believes, and on said information and belief alleges, that DEFENDANTS, in the course of doing business, have discharged petroleum pollutants, toxic metals

and other pollutants to surface waters and groundwater at and around said Site and facility as discussed in the RCRA NOTICE.

26.     PLAINTIFF is informed and believes, and on said information and belief alleges, that DEFENDANTS' handling, use, transport, treatment, storage or disposal of pollutants at the Site and facility identified in the RCRA NOTICE has occurred in a manner which has allowed significant quantities of solid or hazardous constituents to be discharged to soil, groundwater and surface waters beneath and around the Site and beneath and around adjacent properties off site. PLAINTIFF is further informed and believes, and on said information and belief alleges that to date, the levels of pollutants remain high above the allowable MCLs or WQOs for said constituents, creating an imminent and substantial endangerment to public health or the environment.

27.     PLAINTIFF alleges that the activities of DEFENDANTS as alleged in the RCRA NOTICE have been both knowing and/or intentional; that DEFENDANTS have discharged, or are intentionally and illegally continuing to discharge solid or hazardous waste in violation of the RCRA.  DEFENDANTS have known of the contamination at the Site identified in the RCRA NOTICE for at least 5 or more years, or are also aware that continuing discharges or failure to properly remediate the pollution allows the contamination to migrate through the ground or groundwater at or adjacent to said Site, or to continually contaminate or re-contaminate actual or potential sources of drinking water as well as groundwater or surface waters.

28.     Violations of the RCRA as alleged in this Complaint are a major cause of the continuing decline in water quality, or a continuing threat to existing or future drinking water supplies in California.  With every discharge, groundwater and surface water supplies are contaminated. These discharges can or must be controlled in order for the groundwater and surface water supply to be returned as a safe source of drinking water.

29.     PLAINTIFF is informed and believes, and on said information and belief alleges that DEFENDANTS are discharging pollutants found at the Site identified in EXHIBIT A from the Site and various point sources within the Site to waters of the United States.

30.    The CWA regulates the discharge of pollutants into navigable waters.  The statute is structured in such a way that all discharge of pollutants is prohibited with the exception of several enumerated statutory exceptions. One such exception authorizes a polluter who has been issued a NPDES permit pursuant to the Act, to discharge designated pollutants at certain levels subject to certain conditions. Without an NPDES permit **all surface and subsurface** discharges by DEFENDANTS from the Site identified in the CWA NOTICE to waters of the United States are illegal.

31.    PLAINTIFF is informed or believes and on such information and believes alleges that DEFENDANTS have no NPDES permit allowing them to discharge pollutants from the Site identified in the CWA NOTICE to waters of the United States as required by CWA § 301(a), 33 U.S.C. § 1311(a) and CWA §§  402(a) and 402(b), 33 U.S.C. § 1342(a) and 1342(b) as well as CWA § 402(p), 33 U.S.C. 1342(p).  The Act prohibits storm water discharges without a permit (33 U.S.C. § 1342; 40 CFR § 122.26).

32.    The liability of the DEFENDANTS stems from their ownership or operation of the Site or due to the activities conducted on the Site by DEFENDANTS, their subsidiaries, contractors, employees or agents.

33.    The CWA is a strict liability statute with a five year statute of limitations.  The range of dates covered by the CWA NOTICE is the five year statute of limitations as discussed therein.

34.    The majority of the violations identified in the CWA NOTICE such as discharging pollutants to waters of the United States without a NPDES permit, failure to obtain a NPDES permit, failure to implement the requirements of the Act, failure to meet water quality objectives, etc., are continuous, and therefore each day is a violation.  PLAINTIFF alleges that all violations set forth in the CWA NOTICE are continuing in nature or will likely continue after the filing of a lawsuit. Specific dates of violations are evidenced in DEFENDANTS' own records (or lack thereof) or files and records of other agencies including the Regional Quality Control Board, GeoTracker, County Health and local police and fire departments.

## V.    FIRST CLAIM FOR RELIEF

### Violation of Any Permit, Standard, Regulation, Condition, Requirement, Prohibition, or Order [42 U.S.C. § 6972(a)(1)(A)]

PLAINTIFF incorporates the allegations set forth above in paragraphs 1 through 34 and the RCRA NOTICE as though fully set forth herein.  PLAINTIFF is informed or believes, and based on such information or belief alleges as follows:

35.    RCRA § 7002(a)(1)(A), 42 U.S.C. § 6972(a)(1)(A) provides that any person may commence a civil action against any person or governmental entity alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to the RCRA.  Civil penalties may be assessed against any person or entity in violation of such permits, etc. pursuant to the RCRA under the provisions of  42 U.S.C. §§ 6928 (a) or (g).

36.    DEFENDANTS have failed to comply with the statutory or regulatory prevention, detection, monitoring, or remediation requirements imposed under the RCRA or described in the RCRA NOTICE.

37.    DEFENDANTS have no permit issued under the RCRA or by the state of California for the use, handling, storage, transportation, disposal or treatment of hazardous or solid waste at the Site and facility identified in the RCRA NOTICE.

38.    DEFENDANTS' operations at the Site and facility identified in the RCRA NOTICE include unlawful open dumping as that term is used in the RCRA, by discharging petroleum pollutants, including toxic metals such as lead to the open ground, thereby allowing these pollutants to discharge to both groundwater or surface waters.  The Site identified in the RCRA NOTICE does not qualify as a landfill under 42 U.S.C. § 6944, nor does it qualify as a facility for the disposal of solid or hazardous waste.

39.    DEFENDANTS are in violation of Subtitle C of the RCRA (42 U.S.C. § 6921 *et seq.*) (aka subchapter III)  by failing to properly: identify, label or list hazardous materials; keep records of their hazardous waste activities including their use, handling, storage, transportation or treatment

of hazardous or solid waste; take proper measures to protect human health or the environment; monitor their activities; or, acquire RCRA-authorized permits with respect to the same.

40.    DEFENDANTS have in the past or are knowingly now transporting, treating, storing, disposing of or exporting hazardous waste identified or listed under RCRA Subtitle C, thereby placing persons in imminent danger of death or serious bodily injury.

41.    Information currently available to PLAINTIFF indicates that DEFENDANTS' violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to RCRA § 7002(a)(1)(A) has occurred every day since at least January 1, 2005, or on numerous separate occasions, and that those violations are continuing.

42.    The continuing activities by DEFENDANTS as alleged herein irreparably harm PLAINTIFF and its members, for which harm PLAINTIFF and its members have no plain, speedy or adequate remedy at law.

Wherefore, PLAINTIFF prays judgment against DEFENDANTS as set forth hereafter.

## VI.    SECOND CLAIM FOR RELIEF

**Imminent and Substantial Endangerment to Health or to the Environment [42 U.S.C. § 6972(a)(1)(B)]**

PLAINTIFF incorporate the allegations set forth above in paragraphs 1 through 42 and the RCRA NOTICE as though fully set forth herein.  PLAINTIFF is informed or believes, and based on such information and belief alleges as follows:

43.    RCRA § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B), provides that any person may commence a civil action against any person or governmental entity including a past or present generator, transporter, owner or operator of a treatment, storage or disposal facility who has contributed to the past or present storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or to the environment. Civil penalties may be assessed against any person or entity in violation of this section, under the provisions of  42 U.S.C. § 6928 (a) or (g).

44.    The pollutants identified in this Complaint and the RCRA NOTICE are known carcinogens or reproductive toxins, or when released into the environment in sufficient quantity pose

an imminent or substantial risk to public health or to the environment in general.  PLAINTIFF is informed or believes and on such information and belief alleges that amounts of petroleum pollutants,  lead and other toxic metals used, handled, stored, transported, disposed of or treated  by DEFENDANTS is in sufficient quantity to pose an imminent or substantial risk to both the environment or to human health.

45.    DEFENDANTS are past or present generators, past or present transporters, or past or present owners or operators of a treatment, storage, or disposal facility, which has contributed or is contributing to the past or present storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment.

46.    DEFENDANTS are in violation of RCRA Subtitle C (42 U.S.C. § 6921 *et seq.*) (aka subchapter III) by failing to properly: identify, label or list hazardous materials; keep records of their hazardous waste activities including their use, hauling, storage, transportation or treatment of hazardous or solid waste; take proper measures to protect human health or the environment; monitor their activities; or, acquire RCRA-authorized permits with regard to the same. DEFENDANTS' violations of RCRA Subtitle C may create and do create imminent and substantial risk to both the environment or to human health.

47.    DEFENDANTS' knowing transport, treatment, storage, disposal or exporting of hazardous waste identified or listed under RCRA Subtitle C places persons in imminent danger of death or serious bodily injury.

48.    Continuing acts or failure to act by DEFENDANTS to address these violations of the RCRA will irreparably harm PLAINTIFF and its members for which harm PLAINTIFF and its members have no plain, speedy or adequate remedy at law.

Wherefore, PLAINTIFF prays judgment against DEFENDANTS as set forth hereafter.

//

//

//

## VII.   THIRD CLAIM FOR RELIEF

**Violation of Any Permit, Standard, Regulation, Condition, Requirement, Prohibition, or Order [42 U.S.C. § 6972(a)(1)(A)]; Imminent and Substantial Endangerment to Health or to the Environment [42 U.S.C. § 6972(a)(1)(B)] specifically: Violation of Procedural and Substantive Requirements of RCRA (42 U.S.C. § 6924)**

PLAINTIFF incorporates the allegations set forth above in paragraphs 1 through 48 and the RCRA NOTICE as though fully set forth herein.  PLAINTIFF is informed or believes, and on such information and belief alleges as follows:

49.    DEFENDANTS have not complied with any of the procedural and substantive requirements of the RCRA pursuant to RCRA § 3004, 42 U.S.C. § 6924.  These requirements are enumerated in 40 C.F.R. Part 264 , and include requirements for General  Facility Standards (Subpart B), Preparedness and Prevention (Subpart C), Contingency Plans and Emergency Procedures (Subpart D), Releases from Solid Waste Management Units (Subpart F),  Closure and Post-Closure (Subpart G), Financial Requirements (Subpart H), Surface Impoundments  (Subpart K), Waste Piles (Subpart L), Land Treatment (Subpart M), Landfills (Subpart N), and Miscellaneous Units (Subpart X).  DEFENDANTS' failure to comply with these requirements is a violation of RCRA § 3004, 42 U.S.C. § 6924.

50.    Information currently available to PLAINTIFF indicates that DEFENDANTS' handling, treatment, storage, transportation, and/or disposal of their solid or hazardous waste in violation of RCRA § 3004 has occurred every day since at least January 1, 2005, or on numerous separate occasions, and, that those violations are continuing.

51.    The continuing activities by DEFENDANTS as alleged herein irreparably harm PLAINTIFF and its members, for which harm PLAINTIFF and its members have no plain, speedy or adequate remedy at law.

Wherefore, PLAINTIFF prays judgment against DEFENDANTS as set forth hereafter.

//

//

//

## VIII.  FOURTH CLAIM FOR RELIEF

**Violation of Any Permit, Standard, Regulation, Condition, Requirement, Prohibition, or Order [42 U.S.C. § 6972(a)(1)(A)]; Imminent and Substantial Endangerment to Health or to the Environment [42 U.S.C. § 6972(a)(1)(B)] specifically Non-permitted Handling, Treatment, Storage, Transportation and/or Disposal of Solid or Hazardous Waste  (42 U.S.C. § 6925)**

PLAINTIFF incorporates the allegations set forth above in paragraphs 1 through 51 and the RCRA NOTICE as though fully set forth herein.   PLAINTIFF is informed or believes, and on such information and belief alleges as follows:

52.   DEFENDANTS' deposition and maintenance of solid or hazardous waste as described herein causes and has caused the generation and discharge to the environment of solid or hazardous waste.

53.   DEFENDANTS have installed and maintained a system of conveyances to dispose of solid or hazardous generated and released from the Site and facility identified in the RCRA NOTICE.

54.   DEFENDANTS do not possess permits authorized under the RCRA for the handling, storage, treatment, transportation, and/or disposal of their solid or hazardous or solid waste at the Site and facility identified in the RCRA NOTICE, in violation of RCRA § 3005, 42 U.S.C. § 6925.

55.   Information currently available to PLAINTIFF indicates that DEFENDANTS' handling, treatment, storage, transportation, and/or disposal of their solid or hazardous waste in violation of RCRA § 3004 has occurred every day since at least January 1, 2005, or on numerous separate occasions, and, that those violations are continuing.

56.   The continuing activities by DEFENDANTS as alleged herein irreparably harm PLAINTIFF and its members, for which harm PLAINTIFF has no plain, speedy or adequate remedy at law.

Wherefore, PLAINTIFF prays judgment against DEFENDANTS as set forth hereafter.

//

//

//

## IX.    FIFTH CLAIM FOR RELIEF

**Violation of Any Permit, Standard, Regulation, Condition, Requirement, Prohibition, or Order [42 U.S.C. § 6972(a)(1)(A)]; Imminent and Substantial Endangerment to Health or to the Environment [42 U.S.C. § 6972(a)(1)(B)] specifically: Prohibition Against Open Dumping (42 U.S.C. § 6945)**

PLAINTIFF incorporates the allegations set forth above in paragraphs 1 through 56 and the RCRA NOTICE as though fully set forth herein.   PLAINTIFF is informed or believes, and on such information and belief  alleges as follows:

57.    DEFENDANTS have engaged in open dumping by their discharge of solid or hazardous waste to open  ground where it will contaminate and has contaminated the soils, groundwater and surface waters as described herein and in the RCRA NOTICE.

58.    DEFENDANTS' Site and facility  identified in the RCRA NOTICE does not qualify as a landfill under 42 U.S.C. § 6944 and does not qualify as a facility for the disposal of solid or hazardous waste.

59.    DEFENDANTS have no RCRA-authorized permit for disposal, storage or treatment of solid or hazardous waste of the type currently and historically discharged at the identified Site.

60.    Information currently available to PLAINTIFF indicates that DEFENDANTS' open dumping in violation of RCRA § 4005 has occurred every day since at least January 1, 2005, or on numerous  separate occasions, and, that those violations are continuing.

61.    The continuing activities by DEFENDANTS as alleged herein irreparably harm PLAINTIFF and its members, for which harm PLAINTIFF and its members have no plain, speedy or adequate remedy at law.

Wherefore, PLAINTIFF prays judgment against DEFENDANTS as set forth hereafter.

## X.    SIXTH CLAIM FOR RELIEF

**Discharge of Pollutants from a Point Source Must be Regulated by a NPDES Permit [33 U.S.C. § 1342 (a) and § 1342 (b),  33 U.S.C. § 1311]**

PLAINTIFF realleges and incorporates by reference the allegations of Paragraphs 1 through 61 above, including EXHIBITS A and B, as though fully set forth herein.   PLAINTIFF is informed or believes, and on such information and belief  alleges as follows:

62.     DEFENDANTS have violated and continue to violate the CWA as evidenced by the discharges of pollutants from a point source without a NPDES permit in violation of CWA § 301, 33 U.S.C. § 1311.

63.     The violations of DEFENDANTS are ongoing and will continue after the filing of this Complaint.  PLAINTIFF alleges herein all violations which may have occurred or will occur prior to trial, but for which data may not have been available or submitted or apparent from the face of the reports or data submitted by DEFENDANTS to the Regional Water Quality Control Board or to PLAINTIFF prior to the filing of this Complaint.  PLAINTIFF will amend this Complaint if necessary to address DEFENDANTS' State and Federal violations which may occur after the filing of this Complaint.  Each of DEFENDANTS' violations is a separate violation of the CWA.

64.     PLAINTIFF is informed or believes and on such belief alleges that without the imposition of appropriate civil penalties and the issuance of appropriate equitable relief, DEFENDANTS will continue to violate the CWA as well as State and Federal standards with respect to the enumerated discharges and releases complained of herein and in the CWA NOTICE. PLAINTIFF is informed or believes and on such belief alleges that the relief requested in this Complaint will redress the injury to PLAINTIFF and its members, prevent future injury, and protect the interests of PLAINTIFF and its members which interests are or may be adversely affected by DEFENDANTS' violations of the CWA, as well as other State and Federal standards.

## XI.     SEVENTH CLAIM FOR RELIEF

**Discharge of Stormwater or Stormwater Containing Pollutants Without a NPDES Permit or in Violations of the California General Stormwater Permit [33 U.S.C. § 1342(p)]**

PLAINTIFF realleges and incorporates by reference the allegations of Paragraphs 1 through 64 above, including EXHIBITS A and B, as though fully set forth herein.  PLAINTIFF is informed or believes, and on such information and belief  alleges as follows:

65.     DEFENDANTS do not comply with CWA § 402(p) which requires dischargers to acquire a NPDES permit for the discharge of stormwater or to file for coverage under California's

General Industrial Storm Water Permit ("General Permit") as more fully described in the CWA NOTICE.

66. The General Permit prohibits discharges of storm water contaminated with industrial pollutants, which are not otherwise regulated by a NPDES permit, to storm sewer systems or waters of the United States.

67. DEFENDANTS have violated and continue to violate the CWA and the General Permit as evidenced by the discharges of storm water containing pollutants to affected water bodies as identified and described in the CWA NOTICE, in violation of CWA § 301 and CWA § 402(p). Any violations of the General Permit are violations of the Act.  The violations of DEFENDANTS are ongoing and will continue after the filing of this Complaint.

68. PLAINTIFF is informed or believes and on such information alleges that without the imposition of appropriate civil penalties and the issuance of appropriate equitable relief, DEFENDANTS will continue to violate the CWA as well as State and Federal standards with respect to the enumerated discharges and releases identified in the CWA NOTICE.  PLAINTIFF is informed or believes and on such information alleges that the relief requested in this Complaint will redress the injury to PLAINTIFF and its members, prevent future injury, and protect the interests of PLAINTIFF and its members, which interests are or may be adversely affected by DEFENDANTS' violations of the CWA, as well as other State and Federal standards.

## XII.    PRAYER FOR RELIEF

PLAINTIFF prays this Court grant the following relief:

1. Declare DEFENDANTS  to have violated or to be in violation of the RCRA;

2. Enjoin DEFENDANTS from continued violations of the RCRA;

3. Declare DEFENDANTS  to have violated or to be in violation of the CWA;

4. Enjoin DEFENDANTS from continued violations of the CWA;

5. Order DEFENDANTS to fully investigate the Site and facility identified in the RCRA NOTICE including the following:

a. <u>Comprehensive Sensitive Receptor Survey</u> - A comprehensive sensitive receptor survey which will include an aquifer profile, surface water study, water supply survey, and building survey.

b. <u>Aquifer Profile Study</u> - Aquifer profiles identifying all water bearing strata and communication with other aquifers. Testing of all aquifers which are determined to be in communication with the surface unconfined aquifer and contaminated zones for all known pollutants at the Site.

c. <u>Conduit/preferential Pathway Study</u> - A conduit/preferential pathway study identifying all conduits or preferential pathways such as sand and gravel lenses, utilities, roads, services and other potential pathways for pollution migration, as well as testing of all conduits and preferential pathways found to have intersected the plume for all pollutants at the Site.

d. <u>Identification and Testing of Water Supply Wells</u> - A door to door survey to be conducted of potentially affected properties to determine the presence and location of any water supply wells (permitted or not); and, testing for any water supply wells found to contain pollutants.

e. <u>Surface Water Survey</u> - A study determining if any surface waters have been contaminated or have the potential of being contaminated by the pollutants at the Site; said study to include testing of all surface waters and drainage within 1,500 feet of the outer extent of the plume.

f. <u>Vapor Intrusion Study</u> - A vapor intrusion study of the buildings at the Site and buildings located on or off-site within the contaminated zone.

g. <u>Determination of Mass of Plume Constituents</u> - Determination of mass of the plume and masses of the various pollutants at the Site whether or not part of the "plume", such as lead.

h. <u>Toxic Metal Reasonable Potential Analysis</u> - A toxic metals study which will include all metals with a reasonable potential of being contaminants at the Site, such as lead.

6. Order DEFENDANTS to fully remediate the Site reducing all contaminants of concern in groundwater to below WQOs within a period of five (5) years;

1    7.    Order DEFENDANTS to pay civil penalties on a per violation/per day basis for the

2  violations of the RCRA;

3    8.    Order DEFENDANTS to pay PLAINTIFF'S reasonable attorneys' fees and costs

4  (including expert witness fees), as provided by law; or,

5    9.    Grant such other or further relief as may be just or proper.

6

7  DATED:  April 21, 2010                    LAW OFFICE OF JACK SILVER

8

9                                          _____
                                           JACK SILVER
10                                         Attorney for Plaintiff
                                           NORTHERN CALIFORNIA RIVER WATCH
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

# Law Office of Jack Silver



P.O. Box 5469     Santa Rosa, California 95402
Phone 707-528-8175     Fax 707-528-8675
lhm28843@sbcglobal.net

*VIA REGISTERED MAIL -*
*RETURN RECEIPT REQUESTED*

January 11, 2010

Harrison Holdings LLC
(formerly PSH LLC)
74 Harrison Avenue
Sausalito, CA 94965

**Re:**     **Notice of Violations and Intent to File Suit Under the Resource
Conservation and Recovery Act**

Dear Harrison Holdings LLC, Owner, Operator, Site Manager, Managing Agent, Head of
Agency:

**NOTICE**

On behalf of Northern California River Watch ("River Watch"), I am providing
statutory notification ("Notice") to Harrison Holdings LLC, Owner, Operator, Site Manager
and Managing Agent (collectively hereafter, "Polluters"), of continuing and ongoing
violations of the Federal Resource Conservation and Recovery Act ("RCRA,") 42 U.S.C. §
6901 *et seq.*, in conjunction with the continuing pollution at the Site described and identified
in the BACKGROUND section of this Notice.

The RCRA requires that 60 days prior to the initiation of an action for violation of a
permit, standard, regulation, condition, requirement, prohibition or order effective under the
RCRA, a private party must give notice of the violation to the alleged violator, the
Administrator of the Environmental Protection Agency ("EPA") and the State in which the
violation is alleged to have occurred.    If the alleged violator is a State or local agency,
service of notice shall be accomplished by registered mail, return receipt requested, addressed
to, or by personal service upon, the head of that agency.  However, such an action may be
brought immediately after such notification when a violation of Subtitle C of the RCRA is
alleged (subchapter III, 42 U.S.C. § 6921 *et seq.*).

Page 1 of 12

The RCRA also requires that a private party provide 90 days prior notice to the alleged violator, the Administrator of the EPA and the State in which the violation is alleged to have occurred before initiating an action which alleges violations resulting in imminent and substantial endangerment to human health or the environment. However, such an action may be brought immediately after such notification when a violation of Subtitle C of RCRA is alleged (subchapter III, 42 U.S.C. § 6921 *et seq*.).

Subchapter C of the RCRA requires hazardous waste to be tracked from the time of its generation to the time of its disposal, and further requires that such waste not be disposed of in a manner which may create a danger to human health or to the environment. As discussed below, Polluters operate a non-permitted, hazardous waste treatment, storage and disposal site. Polluters have either failed to properly label, track and/or report the type, quantity or disposition of waste from the Site, or have failed to use a manifest system to ensure the waste generated is properly handled, stored, treated or disposed of. Polluters are disposing wastes off-site without compliance with the various requirements under the RCRA, or compliance with the State of California's hazardous waste requirements authorized under the RCRA. Polluters' mishandling of wastes in violation of Subchapter C of the RCRA has created and is creating an imminent and substantial endangerment to human health or the environment.

With this Notice, River Watch alleges violations of Subchapter C with regard to both a violation of a permit, standard, regulation, condition, requirement, prohibition or order effective under the RCRA, as well as violations resulting in an imminent and substantial endangerment to human health or the environment.

River Watch hereby notifies Polluters that at the expiration of the appropriate notice periods under the RCRA, River Watch intends to commence a civil action against Polluters on the following grounds:

1.  Polluters' use and storage of petroleum hydrocarbons, toxic metals and other pollutants at the Site identified in this Notice, has violated and continues to violate permits, standards, regulations, conditions, requirements or prohibitions effective pursuant to the RCRA regarding storage of pollutants. [42 U.S.C. § 6972(a)(1)(A)];

2.  Polluters' operations at the Site identified in this Notice have caused contamination of soil, groundwater and surface waters which presents an imminent and substantial endangerment to human health and the environment [42 U.S.C. § 6972(a)(1)(B)].

Under RCRA, 42 U.S.C. § 6972(a)(1)(A), notice regarding an alleged violation of a permit, standard, regulation, condition, requirement, or order which has become effective under the RCRA, shall include sufficient information to permit the recipient to identify the specific permit, standard, regulation, condition, requirement, or order which has allegedly been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the date or dates of the violation, and the full name, address, and telephone number of the person giving notice.

River Watch therefore provides the following information to Polluters:

## 1.   Specific permit, standard, regulation, condition, requirement, or order which has allegedly been violated

The RCRA, enacted in 1976, is a Federal law of the United States contained in 42 U.S.C. §§ 6901-6992k. The goals of the RCRA are: to protect the public from harm caused by waste disposal; to encourage reuse, reduction, and recycling; and, to clean up spilled or improperly stored wastes.

The EPA's waste management regulations are codified at 40 C.F.R. §§ 239-282. Regulations regarding management of hazardous waste begin at 40 C.F.R. § 260. Pursuant to the RCRA, California has enacted laws and promulgated regulations which are at least as stringent as the federal regulations.

Polluters have no hazardous waste permit for the storage, treatment or disposal of hazardous or solid waste at the Site identified in this Notice. Polluters' use, handling, disposal and storage of waste at that Site has and violated continues to violate permits, standards, regulations, conditions, requirements or prohibitions effective pursuant to the RCRA regarding hazardous waste. See 42 U.S.C. § 6972(a)(1)(A).

## 2.   The Activity Alleged to Constitute a Violation

To comply with this requirement River Watch has set forth narratives below describing with particularity the activities leading to violations.   In summary, the RCRA requires that the environment and the public be protected from the hazardous wastes generated by Polluters. The pollutants found at the Site identified in this Notice constitute hazardous waste under the RCRA, and are required to be managed such that potential and actual harm to the environment and the public is eliminated. The RCRA specifically protects groundwater.

The liability of Polluters stems from either their ownership of the Site or from activities conducted on the Site by entities which violated the RCRA and have contributed

to the past or present handling, storage, treatment, transportation, or disposal of any hazardous waste which may present an imminent and substantial endangerment to health or the environment. River Watch also alleges Polluters to be in violation of a permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to the RCRA.

Polluters are guilty of open dumping as that term is used in the RCRA, by discharging pollutants including petroleum hydrocarbons, and toxic metals and allowing these pollutants to discharge to the Site threatening groundwater and surface waters. The Site does not qualify as a landfill under 42 U.S.C. § 6944, and does not qualify as a facility for the disposal of hazardous waste. Polluters have no RCRA-authorized permit for disposal, storage or treatment of solid or hazardous waste of the type currently and historically discharged at the Site.

Polluters also have liability due to their ownership or operation of preferential pathways which have caused pollutants to be discharged to aquifers, surface waters and groundwaters via Polluters' conduits facilitating pollutant migration, threatening a discharge to waters of the United States and contributing to the past or present handling, storage, treatment, transportation, or disposal of any hazardous waste which may present an imminent and substantial endangerment to health or the environment.

Polluters have caused contamination of soil, surface water, groundwater and residential areas. The groundwater in the area of the Site is hydrologically connected to adjacent wetlands and the Bay. These waters of the United States are already affected or are at imminent risk of contamination from the petroleum hydrocarbons and toxic metals at the Site. Contamination at the Site presents an imminent and substantial endangerment to human health and the environment. See [42 U.S.C. § 6972(a)(1)(B).

### 3. The person or persons responsible for the alleged violation

The person or persons responsible for the alleged violations are the addressees of this Notice, identified herein collectively as "Polluters" throughout this Notice.

### 4. The date or dates of violation or a reasonable range of dates during which the alleged activities occurred.

The RCRA is a strict liability statute. The range of dates covered by this Notice is January 1, 2005 through January 1, 2010. River Watch will from time to time update and supplement this Notice to include all violations which occur after the date of this Notice. The majority of the violations identified in this Notice such as discharging pollutants to groundwater and surface waters, failure to obtain RCRA-authorized permits, failure to

Page 4 of 12

implement the requirements of the RCRA, failure to meet water quality objectives, etc., are continuous. Therefore, each day is a violation. River Watch believes all violations set forth in this Notice are continuing in nature or will likely continue after the filing of a lawsuit. Specific dates of violations are evidenced in Polluters' own records (or lack thereof) or files and records of other agencies including the Regional Quality Control Board ("RWQCB"), GeoTracker, Marin County Health and local police and fire departments.

**5.    The full name, address, and telephone number of the person giving notice.**

The full name, address, and telephone number of the entity giving notice is:

Northern California River Watch
500 North Main Street, Suite 110
Sebastopol, CA 95472
Telephone/Facsimile 707-824-4372

referred to in this Notice as "River Watch". River Watch is a non-profit corporation organized under the laws of the State of California, dedicated to the protection and enhancement of the waters of the State of California including all rivers, creeks, streams and groundwater in Northern California.

River Watch has retained legal counsel to represent them in this matter. All communications should be addressed to:

Jack Silver, Esquire
Law Offices of Jack Silver
P.O. Box 5469
Santa Rosa, CA 95402-5469
Tel. 707-528-8175
Fax. 707-528-8675
lhm28843@sbcglobal.net

The violations of Polluters as set forth in this Notice affect the health and enjoyment of members of River Watch who reside and recreate in the affected areas. The members of River Watch use the affected area for recreation, hiking, photography, nature walks sports, water, fishing, swimming, boating and the like. Their health, use and enjoyment of this natural resource are conditions specifically impaired by the violations of the RCRA described herein.

## BACKGROUND

The property is located in a light industrial area of Sausalito, California on the south side of Liberty Ship Way, and is approximately 3.8 acres in size. The physical address appears to be 30 Liberty Ship Way and/or 28 Liberty Ship Way, Sausalito, California, Assessor's Parcel # 063-090-07. The property is hereafter referred to as the "Site". Currently, the Site is developed with an office building. In March 1997, one 500-gallon gasoline underground storage tank ("UST") was removed from the site by consultant AEI. Total petroleum hydrocarbons as gasoline (TPHg), and benzene remained in the sidewalls up to 370 milligrams per kilogram (mg/kg) and 0.066 mg/kg, respectively. The groundwater sample contained TPHg and benzene at 1,700 micrograms per liter ($\mu$g/l) and 51  $\mu$g/l, respectively, exceeding both Maximum Contaminant Levels (" MCLs") and Water Quality Objectives ("WQOs") set by the State of California.  The stockpiled soil was not then removed from the Site.

In January 2000 the excavation was reopened and extended from its original dimensions three feet to the north and south and five feet to the east and west. Four sidewall samples and a groundwater sample were collected from the excavation. TPHg remained in the soil up to 150 mg/kg, detected in the north sidewall. TPHg and benzene were detected in the groundwater at 600 g/l and 0.76 $\mu$g/l, respectively. An additional 3,000-gallon diesel UST was discovered on the northern portion of the Site during storm drain installation activities. The tank was removed on March 29, 2000.  This tank was also one of the point sources for the petroleum hydrocarbon contaminants at the current Site.  Two samples were originally collected, and based on their hydrocarbon content, the excavation was extended in each direction. High concentrations of TPHg, total petroleum hydrocarbons as diesel ("TPHd"), total petroleum oil and grease ("POG"), and lead remained in the west, south, and east sidewalls of the excavation. The highest concentrations were in the east sidewall with POG at 70,000 mg/kg and lead at 1,800 mg/kg.

Following the removal of a railroad spur, consultant AEI collected soil samples from beneath and around the former spur.  Elevated concentrations of TPHg, TPHd, and POG were detected above 1,000 mg/kg in several locations up to three feet below ground surface ("bgs"). Rocky fill material was encountered below three feet, which inhibited sample collection below this depth. An excavation was opened beneath the former railroad spur on February 9, 2000. At its greatest extent, the excavation was approximately 23 feet wide, 49 feet long and between 4 and 5 feet deep. A total of six sidewall soil samples, one excavation bottom soil sample, and one groundwater sample were collected. TPHd and POG remained in the sidewalls up to 680 mg/kg and 4,300 mg/kg, respectively.  The groundwater sample contained 7,600 $\mu$g/l of TPH-d, 160  $\mu$g/l of 1,2-dichlorobenzene, and 79 $\mu$g/l of lead. All pollutants levels exceed both MCLs and WQOs set by the State of California.

During the installation of a storm drain system, the contractor identified two additional areas of visually impacted soil. The soil was removed by the developer and added to the stockpile created by the diesel tank removal and over-excavation. Light non-aqueous phase liquid ("LNAPL") was observed floating on the water table in a number of borings. Sample analytical data revealed that the bulk of the dissolved phase hydrocarbons were indicative of diesel fuel or fuel oil range hydrocarbons, with very low light range fuel components. In addition to hydrocarbons, several areas of high concentrations of lead, chromium VI, and nickel were observed. All of these toxic metals exceed both MCLs and WQOs set by the State of California. The source and extent of these toxic metals has not been determined. LNAPL remains in the area of the former diesel UST although regular removal efforts have reduced its measurable thickness. Residual adsorbed phase petroleum is present on site and around the release area.

The Site is located at the margin of Richardson Bay on the eastern side of the Marin peninsula. The Site is at a surveyed elevation of approximately 10 feet above mean sea level (msl). The Site is relatively flat, at the base of a slope rising to the southeast. Sediments of the Site are mapped as artificial fill with the bedrock to the southeast comprised of mélange of the Franciscan Formation. The northeastern portion of the Site and the land to the north appear to have been reclaimed from the Bay prior to the 1940s, based on aerial photograph review.

Drilling work has identified recent engineered import fill to depths of 1 to 3 feet throughout the Site with other fill present locally to a depth of up to 10 feet. Drilling on the southern side of the property building has revealed well graded sand with varying clay and gravel content to a depth of 4.5 to 7 feet bgs, underlain by an approximately 3 foot section of wet, high organic content, Bay mud clay. Below this, well graded sandy gravels were encountered to boring termination, at 11 to 12 feet bgs. To the north of the property boundary, soils to the east (AEI-19, AEI-23 to AEI-25) side tend to consist of predominately finer materials: clays with varying silt, sand and gravel content. The easternmost boring, AEI-18 encountered poorly graded medium sand to a depth of 7 feet underlain by well graded sand. Westward, gravel, clay gravel, and silty and gravelly sand are present at varying depths and thicknesses interbedded with sandy and gravelly clay. In permeable sediments, groundwater was observed during drilling at depths ranging from approximately 4 to 7 feet bgs. Based on monitoring data, the water table beneath the Site exists at approximately 4 to 6 feet bgs at mean tide. Water levels are tidally influenced. The nearest arm of the Bay is approximately 50 feet east of the property at neutral tide. A detailed history of the use of the USTs or the volume of material released is unknown. Mass of the plume has not been calculated.

Four soil vapor borings were advanced at and in the vicinity of the site (SV-1 through SV-4) during the recent investigation activities. The concentrations of TPHg and benzene in SV-2 exceeded their respective Effects Screening Level values.

The two primary potential receptors at the Site are the waters of the San Francisco Bay, which is located approximately 50 feet east of the Site, and tenants/workers at the Site and Site vicinity. Exposure into the San Francisco Bay is through contaminated groundwater leaching into the Bay. Although there appears to be waste storage, removal and transportation taking place at the Site, Polluters have either failed to properly label, track and/or report the type, quantity or disposition of waste from the Site, or have failed to use a manifest system to ensure the waste generated is properly handled, stored, treated or disposed of, as a review of the records kept at the regulatory agency do not reveal any records responsive to RCRA Subtitle C requirements.

## REGULATORY STANDARDS

MCLs and WQOs exist to ensure protection of the beneficial uses of water. Several beneficial uses of water exist, and the most stringent WQOs for protection of all beneficial uses are selected as the protective water quality criteria. Alternative cleanup and abatement actions need to be considered which evaluate the feasibility of, at a minimum: (1) cleanup to background levels, (2) cleanup to levels attainable through application of best practicable technology, and (3) cleanup to protective water quality criteria levels. Existing and potential beneficial uses of area groundwater include domestic, agricultural, industrial and municipal water supply.

The pollutants at the Site have been characterized as "hazardous waste" and "solid waste" within the meaning of the provisions of RCRA. Accordingly, all regulatory mandates applicable to hazardous or solid waste apply to the use, storage and disposal of these constituents and products.

## VIOLATIONS

River Watch allege Polluters to be in violation of a permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to the RCRA. River Watch allege Polluters to be past or present generators, past or present transporters, or past or present owners or operators of a treatment, storage, or disposal facility. River Watch alleges Polluters have contributed or are contributing to the past or present handling, storage, treatment, transportation, or disposal of a solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment.

Polluters are guilty of open dumping as that term is used in the RCRA, by discharging pollutants to the open ground allowing these pollutants to discharge to both groundwater and surface waters. The Site does not qualify as a landfill under 42 U.S.C. § 6944, and does not qualify as a facility for the disposal of hazardous waste. Polluters have no RCRA-authorized permit for disposal, storage or treatment of solid or hazardous waste of the type currently and historically found at the Site.

Between January 1, 2005 and January 1, 2010 ongoing violations of the RCRA as described herein have occurred. Polluters have caused or permitted, cause or permit, or threaten to cause or permit hazardous waste to be discharged or deposited at the Site where it is, or probably will be, discharged into waters of the State and now creates, or threatens to create, a condition of pollution or nuisance. The discharge and threatened discharge of such waste is deleterious to the beneficial uses of water, and is creating and threatens to create a condition of pollution and nuisance which will continue unless the discharge and threatened discharge is permanently abated.

Past or current violations of the RCRA authorize the assessment of civil penalties. The enforcement provisions of 42 U.S.C. § 6928(a) and § 6928(g) provide for penalties when conditions of hazardous waste disposal have been alleged, as River Watch has alleged in this Notice with respect to the Site. Accordingly, under these provisions, persons or entities violating the RCRA are subject to substantial liability to the United States on a per-day basis.

Polluters' use and storage of wastes at the Site between January 1, 2005 and January 1, 2010 have allowed significant quantities of hazardous constituents to be released or discharged into soil and groundwater in violation of the provisions of the RCRA and of California's hazardous waste regulatory programs..

Contaminant levels of petroleum hydrocarbons and toxic metals in the soil and groundwater at the Site are significantly greater than the allowable MCLs and/or WQOs for said constituents. The petroleum hydrocarbons and toxic metals at the Site are known carcinogens and toxins. All are known to harm both plants and animals. In their concentrations at the Site and proximity to sensitive receptors such as groundwater, surface water, plants, insects, animals and humans, these pollutants are creating an imminent and substantial endangerment to public health and the environment.

Polluters have known of the contamination at the Site since at least January 1, 2005 and have also known that failing to promptly remediate the pollution allows the contamination to migrate through soil and groundwater at and adjacent to the Site, and to continually contaminate and re-contaminate soil, groundwater and surface waters.

Page 9 of 12

## CONTINUING VIOLATIONS

Some of the preferential pathways at the Site such as roads have been identified, but sewer lines, utility trenches, waterways, ditches and the like have not be examined. The geomorphology of the area indicates there exists numerous gravel lenses which are known to be conduits and can cause significant off-site migration of pollutants. River Watch alleges that Polluters have made no attempt to determine the mass of the petroleum hydrocarbons and toxic metals making mass balance clean-up impossible to determine.

For numerous years the petroleum hydrocarbons and toxic metals at the Site have been migrating, contaminating groundwater, aquifers, private property, waters of the United States and the like. Aquifer studies have been inadequate. River Watch is concerned that due to its proximity to the Site, the San Francisco Bay has already been compromised by Polluters' contaminants. River Watch takes the position that adequate monitoring should be conducted along surface waters; and, that remediation must be conducted much more proactively to remove existing threats both to the environment and to individuals who live in the area of the Site.

For numerous years pollutants have been discharged from the Site. As required by the RCRA and California's implementation of the RCRA, Polluters have: failed to prevent a release; failed to properly detect and monitor releases; failed to properly report and keep records of the release; and, failed to take proper corrective action. River Watch alleges these violations are all ongoing.

Violations of the RCRA of the type alleged herein are a major cause of the continuing decline in water quality and pose a continuing threat to existing and future water supplies of California. With every discharge groundwater supplies are contaminated. These discharges can and must be controlled in order for the groundwater supply to be returned to a safe condition.

In addition to the violations set forth above, this Notice is intended to cover all Polluters' violations of the RCRA evidenced by information which becomes available to River Watch after the date of this Notice. River Watch also seeks all penalties and other enforcement provisions related to such violations.

## CONCLUSION

River Watch believes this Notice sufficiently states the grounds for filing suit under the statutory and regulatory provisions of RCRA. At the close of the notice period or shortly thereafter, River Watch intends to file suit against Polluters under the provisions of the

RCRA for each of the violations alleged in this Notice and with respect to the existing conditions at the Site.

During the 90-day notice period, however, River Watch is willing to discuss effective remedies for the violations referenced in this Notice.  If Polluters wish to pursue such discussions in the absence of litigation, they are encouraged to initiate such discussions immediately so that the parties might be on track to resolving the issues raised in this Notice before the end of the notice period.  River Watch will not delay the filing of a lawsuit if discussions have not commenced by the time the 90-day notice period ends.

Very truly yours,

Jack Silver

JS:lhm
cc:     Lisa Jackson, Administrator
        U.S. Environmental Protection Agency
        Ariel Rios Building
        1200 Pennsylvania Avenue, N.W.
        Washington, D.C. 20460

        Wayne Nastri, Regional Administrator
        U.S. Environmental  Protection Agency, Region 9
        75 Hawthorne Street
        San Francisco, CA 94105

        Dorothy R. Rice, Executive Director
        State Water Resources Control Board
        P.O. Box 100
        Sacramento, California  95812-0100

        Mark Leary, Executive Director
        Calif. Integrated Waste Management. Board
        1001 "I" Street
        Sacramento, CA 95814

        California Attorney General's Office
        California Department of Justice
        P.O. Box 944255
        Sacramento, CA 94244-2550

California Environmental Protection Agency
P.O. Box 2815
Sacramento, CA 95812-2815

James G. Woo, CPA,
Registered Agent for Service of Process
Harrison Holdings, LLC
601 Montgomery Street, Suite 1010
San Francisco, CA 94111

Sandi Lynn Nichols, Esq.
ALLEN MATKINS
3 Embarcadero Center, 12th Floor
San Francisco, CA 94111

# EXHIBIT B

# Law Office of Jack Silver



P.O. Box 5469         Santa Rosa, California 95402
Phone  707-528-8175     Fax  707-528-8675
lhm28843@sbcglobal.net

*VIA CERTIFIED MAIL*
*RETURN RECEIPT REQUESTED*

November 5, 2009

PSH, LLC
P.O. Box 2004
Sausalito, CA 94966

**Re:**     **Notice of Violations and Intent to File Suit Under the Clean Water Act**

Dear PSH LLC, Owner, Site Manager, Managing Agent:

## NOTICE

Clean Water Act § 505(b), 33 U.S.C. § 1365(b), ("CWA"), requires that sixty (60) days prior to the initiation of a civil action under CWA § 505(a), 33 U.S.C. § 1365(a), a citizen must give notice of his/her intent to sue to the alleged violator, the EPA (both local and federal), the State in which the violations occur and, if the alleged violator is a State or local agency, service of notice shall be accomplished by certified mail addressed to, or by personal service upon, the head of such agency.  If the alleged violator is an individual or corporation, service of notice shall be accomplished by certified mail addressed to, or by personal service upon, the owner or managing agent with a copy sent to the registered agent of the corporation.

Northern California River Watch ( "River Watch") is hereby providing statutory notification to PSH, LLC, Owner, Site Manager, and Managing Agent, (collectively, "Polluters"), of continuing and ongoing violations of "an effluent standard or limitation", permit condition or requirement and/or "an order issued by the Administrator or a State with respect to such standard or limitation" under CWA § 505(a)(1), 33 U.S.C. § 1365(a)(1), the Code of Federal Regulations, and the Regional Water Quality Control Board's Basin Plan, as exemplified by Polluters' illegally discharging pollutants from a point source to waters of the United States without a National Pollution Discharge Elimination System ("NPDES") permit.

This letter also addresses the ongoing violations of the substantive and procedural requirements of CWA § 402(p) and NPDES General Permit No. CAS000001, State Water Resources Control Board Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ ("General Industrial Storm Water Permit" or "General Permit"). The CWA prohibits storm water discharges without a permit. (U.S.C. § 1342; C.F.R. § 122.26).

The CWA requires that any notice regarding an alleged violation of an effluent standard or limitation, or of an order with respect thereto, shall include sufficient information to permit the recipient to identify:

**1.     The specific standard, limitation, or order alleged to have been violated**

The CWA regulates the discharge of pollutants into navigable waters. The statute is structured in such a way that all discharge of pollutants is prohibited with the exception of several enumerated statutory exceptions. One such exception authorizes a polluter who has been issued a NPDES permit pursuant to the CWA, to discharge designated pollutants at certain levels subject to certain conditions. The effluent discharge standards or limitations specified in a NPDES permit define the scope of the authorized exception to the CWA § 301(a), 33 U.S.C.§ 1311(a) prohibition. Without a NPDES permit **all surface and subsurface** discharges from a point source to waters of the United States are illegal.

River Watch hereby notifies Polluters of the fact that they have no NPDES permit allowing the discharge of pollutants from the Site and numerous point sources including the storage tanks identified further in this Notice, to waters of the United States as required by CWA § 301(a), 33 U.S.C. § 1311(a) and CWA §§ 402 (a) and 402 (b), 33 U.S.C. §§ 1342(a) and 1342(b) as well as CWA § 402(p), 33 U.S.C. 1342(p). The CWA prohibits storm water discharges without a permit. (33 U.S.C. § 1342; 40 C.F.R. § 122.26).

**2.     The activity alleged to constitute a violation**

To comply with this requirement, River Watch has set forth below narratives describing with particularity the activities leading to violations. In summary the CWA requires that all discharges of pollution from a point source to a water of the United States without a NPDES permit are prohibited. Polluters are discharging pollutants including petroleum hydrocarbons and toxic metals from the Site and various point sources within the Site as identified further in this Notice, to waters of the United States. The point sources were underground storage tanks ("USTs")which were removed. The solid and hazardous waste which was discharged from these USTs is also a point source. These point sources continue to discharge from the Site to the estuary adjacent to the Site. The liability of Polluters, stems from their ownership or operation of the Site or due to the activities conducted on the Site by Polluters.

### 3.    The discharger responsible for the alleged violation.

The discharger responsible for the alleged violations are the addressees of this Notice - referred to throughout this Notice as "Polluters".

### 4.    The location of the alleged violation.

The location or locations of the various violations is the Site identified in the BACKGROUND section of this Notice and in records either created or maintained by or for Polluters which relate to Polluters' activities on the Site.

### 5.    The date or dates of violation or a reasonable range of dates during which the alleged activities occurred.

Disposition, discharge and release of pollutants can be traced as far back as at least November 1, 2004. The CWA is a strict liability statute with a statute of limitations of 5 years; therefore, the range of dates covered by this Notice is November 1, 2004 through November 1, 2009.

River Watch will from time to time update and supplement this Notice to include all violations which occur after the date of this Notice. The majority of the violations identified in this Notice such as discharging pollutants to waters of the United States without a NPDES permit, failure to obtain a NPDES permit, failure to implement the requirements of the CWA, failure to meet water quality objectives, etc., are continuous, and therefore each day is a violation. River Watch believes all violations set forth in this Notice are continuing in nature or will likely continue after the filing of a lawsuit. Specific dates of violations are evidenced in Polluters' own records (or lack thereof) or files and records of other agencies including the Regional Quality Control Board ("RWQCB"), GeoTracker, Marin County Health and local police and fire departments.

### 6.    The full name, address, and telephone number of the person giving notice.

The full name, address, and telephone number of the entity giving notice is:

Northern California River Watch
500 North Main Street, Suite 110
Sebastopol, CA 95472
Telephone/Facsimile 707-824-4372

referred to in this Notice as "River Watch". River Watch is a non-profit corporation organized under the laws of the State of California, dedicated to the protection and

enhancement of the waters of the State of California including all rivers, creeks, streams and groundwater in Northern California.

River Watch has retained legal counsel to represent them in this matter. All communications should be addressed to:

Jack Silver, Esquire
Law Offices of Jack Silver
P.O. Box 5469
Santa Rosa, CA 95402-5469
Tel. 707-528-8175
Fax. 707-528-8675
lhm28843@sbcglobal.net

The violations of Polluters as set forth in this Notice affect the health and enjoyment of members of River Watch who reside and recreate in the affected areas. The members of River Watch use the affected area for recreation, hiking, photography, nature walks sports, water, fishing, swimming, boating and the like. Their health, use and enjoyment of this natural resource are conditions specifically impaired by the violations of the CWA as described herein.

## BACKGROUND

The property which is the subject of this Notice is located in a light industrial area of Sausalito, on the south side of Liberty Ship Way, and is approximately 3.8 acres in size. The physical address appears to be 30 Liberty Ship Way, Sausalito, California, Assessor's Parcel Number 063-090-07. The property is hereafter referred to as the "Site". Currently, the Site is developed with an office building. In March of 1997, one 500-gallon gasoline UST was removed from the Site by consultant AEI. Total petroleum hydrocarbons as gasoline (TPHg), and benzene remained in the sidewalls of the UST up to 370 milligrams per kilogram (mg/kg) and 0.066 mg/kg, respectively. This UST was one of the point sources for the petroleum hydrocarbon contaminants at the current Site. The groundwater sample contained TPHg and benzene at 1,700 micrograms per liter ($\mu$g/l) and 51   $\mu$g/l, respectively, exceeding both Maximum Contaminant Levels ("MCLs") and Water Quality Objectives ("WQOs") set by the State of California. The stockpiled soil was not then removed from the Site.

In January 2000 the excavation was reopened and extended from its original dimensions three feet to the north and south and five feet to the east and west. Four sidewall samples and a groundwater sample were collected from the excavation. TPHg remained in the soil up to 150 mg/kg, detected in the north sidewall. TPHg and benzene were detected in the groundwater at 600 g/l and 0.76 $\mu$g/l, respectively. An additional 3,000-gallon diesel UST

Page 4 of 8

was discovered on the northern portion of the Site during storm drain installation activities. The tank was removed on March 29, 2000. This tank was also one of the point sources for the petroleum hydrocarbon contaminants at the current Site. Two samples were originally collected, and based on their hydrocarbon content, the excavation was extended in each direction. High concentrations of TPHg, total petroleum hydrocarbons as diesel ("TPHd"), total petroleum oil and grease ("POG"), and lead remained in the west, south, and east sidewalls of the excavation. The highest concentrations were in the east sidewall with POG at 70,000 mg/kg and lead at 1,800 mg/kg.

Following the removal of a railroad spur, consultant AEI collected soil samples from beneath and around the former spur. Elevated concentrations of TPHg, TPHd, and POG were detected above 1,000 mg/kg in several locations up to three feet below ground surface ("bgs"). Rocky fill material was encountered below three feet, which inhibited sample collection below this depth. An excavation was opened beneath the former railroad spur on February 9, 2000. At its greatest extent, the excavation was approximately 23 feet wide, 49 feet long and between 4 and 5 feet deep. A total of six sidewall soil samples, one excavation bottom soil sample, and one groundwater sample were collected. TPHd and POG remained in the sidewalls up to 680 mg/kg and 4,300 mg/kg, respectively. The groundwater sample contained 7,600 µg/l of TPH-d, 160 µg/l of 1,2-dichlorobenzene, and 79 µg/l of lead. All pollutants levels exceed both MCLs and WQOs set by the State of California.

During the installation of a storm drain system, the contractor identified two additional areas of visually impacted soil. The soil was removed by the developer and added to the stockpile created by the diesel tank removal and over-excavation. Light non-aqueous phase liquid ("LNAPL") was observed floating on the water table in a number of borings. Sample analytical data revealed that the bulk of the dissolved phase hydrocarbons were indicative of diesel fuel or fuel oil range hydrocarbons, with very low light range fuel components. In addition to hydrocarbons, several areas of high concentrations of lead, chromium VI, and nickel were observed. All of these toxic metals exceed both MCLs and WQOs set by the State of California. The source and extent of these toxic metals has not been determined. LNAPL remains in the area of the former diesel UST although regular removal efforts have reduced its measurable thickness. Residual adsorbed phase petroleum is present on site and around the release area.

The Site is located at the margin of Richardson Bay on the eastern side of the Marin peninsula. The Site is at a surveyed elevation of approximately 10 feet above mean sea level (msl). The Site is relatively flat, at the base of a slope rising to the southeast. Sediments of the Site are mapped as artificial fill with the bedrock to the southeast comprised of mélange of the Franciscan Formation. The northeastern portion of the Site and the land to the north appear to have been reclaimed from the Bay prior to the 1940s, based on aerial photograph review.

Drilling work has identified recent engineered import fill to depths of 1 to 3 feet throughout the Site with other fill present locally to a depth of up to 10 feet. Drilling on the southern side of the property building has revealed well graded sand with varying clay and gravel content to a depth of 4.5 to 7 feet bgs, underlain by an approximately 3 foot section of wet, high organic content, Bay mud clay. Below this, well graded sandy gravels were encountered to boring termination, at 11 to 12 feet bgs. To the north of the property boundary, soils to the east (AEI-19, AEI-23 to AEI-25) side tend to consist of predominately finer materials: clays with varying silt, sand and gravel content. The easternmost boring, AEI-18 encountered poorly graded medium sand to a depth of 7 feet underlain by well graded sand. Westward, gravel, clay gravel, and silty and gravelly sand are present at varying depths and thicknesses interbedded with sandy and gravelly clay. In permeable sediments, groundwater was observed during drilling at depths ranging from approximately 4 to 7 feet bgs. Based on monitoring data, the water table beneath the Site exists at approximately 4 to 6 feet bgs at mean tide. Water levels are tidally influenced. The nearest arm of the Bay is approximately 50 feet east of the property at neutral tide. A detailed history of the use of the USTs or the volume of material released is unknown. Mass of the plume has not been calculated.

Four soil vapor borings were advanced at and in the vicinity of the site (SV-1 through SV-4) during the recent investigation activities. The concentrations of TPHg and benzene in SV-2 exceeded their respective Effects Screening Level values.

The two primary potential receptors at the Site are the waters of the San Francisco Bay, which is located approximately 50 feet east of the Site, and tenants/workers at the Site and Site vicinity. Exposure into the San Francisco Bay is through contaminated groundwater leaching into the Bay and from contaminated stormwater draining to the Bay.

## CONTINUING VIOLATIONS

Existing records indicate that pollutants continue to be discharged from the Site to waters of the United States. Pursuant to CWA § 301(a), 33 U.S.C. § 1311(a), the EPA and the State of California have formally concluded that violations by Polluters as identified in this Notice are prohibited by law. Beneficial uses of surface waters are being affected in a prohibited manner by these violations. The EPA and the State of California have identified Polluters' operations at the Site as a point source, the discharges from which contribute to violations of applicable water quality standards.

From November 1, 2004 through November 1, 2009, Polluters have violated the CWA by failing to acquire a NPDES permit, and for discharging pollutants into waters of the United States without a NPDES permit. Each and every discharge is a separate violation of the CWA.

These enumerated violations are based upon review of the RWQCB files and Geotracker files for Polluters, other files publically available as well as interviews with area residents.   In addition to all of the above violations, this Notice covers any and all violations evidenced by Polluters' records and monitoring data which Polluters have submitted (or have failed to submit) to the RWQCB and/or other regulatory agencies during the period November 1 , 2004 through November 1, 2009.   This Notice also covers any and all violations which may have occurred but for which data may not have been available or submitted or apparent from the face of the reports or data submitted by Polluters to the RWQCB, Geotracker or other regulatory agencies.

Pursuant to CWA § 309(d), 33 U.S.C. § 1319(d), each of the above-described violations of the CWA subjects the violator to a penalty per day/per violation for violations occurring within 5 years prior to the initiation of a citizen enforcement action.   In addition to civil penalties, River Watch will seek injunctive relief preventing further violations of the CWA pursuant to CWA § 505(a) and § 505(d), 33 U.S.C. §§ 1365(a) and (d), and such other relief as is permitted by law.  Lastly, CWA § 505(d), 33 U.S.C. § 1365(d), permits prevailing parties to recover costs and fees.

## CONCLUSION

River Watch believes this Notice sufficiently states grounds for filing suit.   At the close of the 60-day notice period or shortly thereafter River Watch intends to file a citizen's suit under the CWA against Polluters for the violations enumerated herein.

During the 60-day notice period, River Watch is willing to discuss effective remedies for the violations noted in this Notice.  However, if Polluters wish to pursue such discussions in the absence of litigation, it is suggested those discussions be initiated within the next 20 days so that they may be completed before the end of the 60-day notice period.  River Watch does not intend to delay the filing of a lawsuit if discussions are continuing when that period ends.

Very truly yours,

Jack Silver

JS:lhn

cc:     Administrator
        U.S. Environmental Protection Agency
        Ariel Rios Building
        1200 Pennsylvania Avenue, N.W.
        Washington, D.C. 20460

Page 7 of 8

Regional Administrator
U.S. Environmental Protection Agency, Region 9
75 Hawthorne Street
San Francisco, California 94105

Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, California 95812

Barbara B. Bair,  Registered Agent
PSH, LLC
1231 E. Loma Alta Drive
Altadena, CA 91001